UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

FREDERICK J. NERONI,

                              Plaintiff,

         -against-                                          3:13-CV-0127 (LEK/DEP)

STEVEN D. ZAYAS; *et al*.,

                              Defendants.
_____

## MEMORANDUM-DECISION and ORDER

## I.      INTRODUCTION

         Plaintiff Frederick J. Neroni commenced this action on February 3, 2013, alleging various

constitutional violations related to his disbarment.  Dkt. No. 1.  Currently pending before the Court

are Defendants' Motion to dismiss the Amended Complaint for lack of subject matter jurisdiction

and failure to state a claim, and Plaintiff's Motion to supplement the Amended Complaint.  Dkt.

Nos. 4 ("Amended Complaint"); 18 ("Defendants' Motion"); 28 ("Plaintiff's Motion").  For the

following reasons, Defendants' Motion is granted in part, and Plaintiff's Motion is denied.

## II.     BACKGROUND[1]

         The Amended Complaint is lengthy, convoluted, digressive, and redundant.  The Court

therefore recites only those factual allegations directly relevant to the pending Motions.  For a more

complete statement of the facts, reference is made to the Amended Complaint.

_____

         [1] Because this matter is before the Court on a motion to dismiss, the factual allegations of the
Complaint are accepted as true and form the basis of this section.  See Shipping Fin. Servs. Corp. v.
Drakos, 140 F.3d 129, 131 (2d Cir. 1998) ("When considering a motion to dismiss for lack of
subject matter jurisdiction or for failure to state a cause of action, a court must accept as true all
material factual allegations in the complaint.").

Plaintiff is a graduate of Albany Law School and was admitted to the New York State Bar in 1974. Am. Compl. ¶ 16. On July 7, 2011, the New York State Supreme Court, Appellate Division, Third Department, issued an order disbarring Plaintiff. Am. Compl. ¶ 17; In re Neroni, 926 N.Y.S.2d 744, 744 (App. Div. 2011), appeal dismissed, 954 N.E.2d 1172, 1172 (N.Y.) ("Disbarment Order").

Upon disbarment, Plaintiff became subject to various legal authorities regulating the conduct of disbarred attorneys. First, N.Y. Judiciary Law § 90(2) authorizes the Appellate Division to remove attorneys from office, and requires any order of removal to include a provision requiring the attorney to refrain from the practice of law. Pursuant to this statutory requirement, the Disbarment Order "commanded [Plaintiff] to desist and refrain from the practice of law in any form, either as principal or as agent, clerk or employee of another." It further forbade Plaintiff from "appear[ing] as an attorney or counselor-at-law before any court, judge, justice, board, commission or other public authority" and from "giv[ing] to another an opinion as to the law or its application, or any advice in relation thereto." Disbarment Order. Violation of the Disbarment Order may be punished as a contempt of court. N.Y. JUD. LAW § 90(2). Second, N.Y. Judiciary Law § 486 provides that unauthorized practice of law by a disbarred attorney is a misdemeanor offense. Finally, the Third Department's Rules of Court also restrict the conduct of disbarred attorneys. N.Y. CT. RULES § 806.9. For ease of reference, the Court refers collectively to the restrictions on the unauthorized practice of law contained in the Disbarment Order, the Judiciary Law, and the Court Rules as the "UPL Provisions."

Plaintiff's spouse is an attorney. Am. Compl. ¶ 37. She maintains a home office at the couple's residence in Delhi, NY. Id. ¶¶ 2, 37. No support staff works there, and it is otherwise

simply their residence.  Id.

Since Plaintiff's disbarment, the Third Department's Committee on Professional Standards (the "Committee") has twice investigated Plaintiff for possible unauthorized practice of law.  Id. ¶ 34.  One of these post-disbarment investigations commenced in November 2011.  Id. ¶ 37.  A non-attorney local criminal court justice attempted to serve legal papers on Plaintiff's spouse at the residence.  Id.  The justice insisted that Plaintiff sign for acceptance of service, which Plaintiff did. Id. ¶¶ 37-38.  The justice then reported Plaintiff to the Committee for unauthorized practice of law. Id. ¶ 38.  He reported that Plaintiff had accepted service on his spouse's behalf, and that Plaintiff had been sitting at a desk in front of a computer talking to a man while another man was walking through the door.  Id. ¶ 39.  Plaintiff alleges that these men were contractors remodeling his kitchen. Id. ¶ 42.  The Committee initiated an investigation and sent Plaintiff a questionnaire demanding to know who the men at his house were, what Plaintiff was doing with them, and whether the men were his spouse's clients.  Id. ¶ 44.  Plaintiff cooperated with the Committee and answered the questions.  Id. ¶ 47.  The Committee subsequently informed Plaintiff that the charges against him were unfounded.  Id. ¶ 48.

The Committee initiated another investigation in response to a complaint that Plaintiff served documents pertaining to proceedings in which his spouse was a party.  Id. ¶ 49.  Plaintiff alleges that he did not become aware of this second investigation until he received notice that the underlying charges were unfounded.  Id. ¶ 50.

Plaintiff commenced this action on February 3, 2013, naming several Defendants: Steven D. Zayas, a Committee staff attorney ("Zayas"); Karen Peters, Chief Justice of the Third Department ("Peters"); Monica Duffy, Chairperson of the Committee ("Duffy"); Jonathan Lippman, Chief Judge

of the New York Court of Appeals ("Lippman"); Andrew Cuomo, Governor of the State of New York ("Cuomo"); Dean Skelos, Majority Leader of the New York State Senate ("Skelos"); Eric Schneiderman, New York State Attorney General ("Schneiderman") (collectively, the "State Defendants"); and Richard D. Northrup, Jr., District Attorney of Delaware County, NY ("Northrup") (together with the State Defendants, "Defendants").  Dkt. No. 1.  Defendant Zayas is sued in his official and individual capacities; the remaining Defendants are sued only in their official capacities.  See Am. Compl.

Plaintiff seeks monetary, declaratory, and injunctive relief for a variety of ill-defined causes of action.  See generally Am. Compl.  Briefly stated, Plaintiff alleges that N.Y. Judiciary Law § 90(10), which regulates the confidentiality of documents pertaining to the admission and discipline of attorneys, is unconstitutional, and that Plaintiff's rights were violated by the withholding of his disciplinary file during and after his disbarment proceedings.  Am. Compl. ¶¶ 65-66, 75.  Plaintiff next alleges that the Committee's post-disbarment investigations violated his due process rights, right to privacy, and right of association.  Id. ¶ 107.  By prohibiting disbarred attorneys from pronouncing to "another" their "opinions about the law," Judiciary Law 90(b)(2) violates his rights to freedom of speech and association; his right to petition the government; his right to participate in the democratic political process; and his right to pro se representation.  Am. Compl. ¶¶ 111, 126, 136.  Plaintiff also claims that the statute's prohibition on giving opinions about the law violates his First Amendment rights by preventing him from teaching, speaking, and writing about the law, homeschooling his minor child, working in a law office in a non-attorney capacity, testifying in out-of-court proceedings, serving as a private arbitrator or mediator, representing clients before arbitrators, and engaging in lay advocacy where otherwise allowed.  Id.

4

¶¶ 181, 199, 212-13, 226-27, 236, 245.  Plaintiff also directly challenges his disbarment on several

grounds: he was denied a hearing based on the doctrine of non-mutual offensive collateral estoppel;

the disbarment proceeding allowed for only limited discovery; he was not provided an

administrative hearing before the Committee prior to the filing of a petition with the Third

Department; and the inclusion on the Committee of private attorneys who were competitors of

Planitiff violated his right to a neutral investigator and prosecutor.  Id. ¶¶ 271, 277-78, 298, 301,

303-04, 330.  Finally, Plaintiff seeks a declaration that the entire system of attorney discipline in

New York State is unconstitutional based on numerous allegations of misconduct by members of the

Bar, and based on the doctrine of the separation of powers.  Id. ¶¶ 385-86, 400.

On May 13, 2013, the State Defendants moved to dismiss the Amended Complaint for lack

of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a

claim under Rule 12(b)(6).  Defs.' Mot.  Defendant Northrup later joined in supporting the State

Defendants' Motion.  Dkt. Nos. 20; 32; 36.  Plaintiff then filed his Motion to supplement the

Amended Complaint and a proposed supplemental complaint.  Pl.'s Mot.; 28-1 ("Proposed

Supplemental Complaint").

## III.     DEFENDANTS' MOTION

### A.  Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6).  Such a

determination "requires the reviewing court to draw on its judicial experience and common sense."

Iqbal, 556 U.S. at 679 (citation omitted).  A court must accept as true the factual allegations contained in the complaint and draw all inferences in favor of the plaintiff.  See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006).  A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]."  Id. at 556.  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Id. (citing Twombly, 550 U.S. at 555).  Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal.  See id. at 678-79.

In reviewing a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs."  J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004).  A court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits."  Id.  "Furthermore, 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'"  Gunst v. Seaga, No. 05 Civ. 2626, 2007 WL 1032265, at *2 (S.D.N.Y. Mar. 30, 2007) (quoting Shipping Fin. Servs. Corp. v. Drakos, 140

F.3d 129, 131 (2d Cir. 1998)).

**B. Discussion**

Defendants do not address the merits of Plaintiff's claims, but instead argue that the Court

lacks jurisdiction based on, *inter alia*, the Rooker-Feldman doctrine, lack of standing, sovereign

immunity, official immunity, and the doctrine of equitable restraint. See generally Dkt Nos. 18-1

("Memorandum"); 20-1.

*1. The Rooker-Feldman Doctrine*

Within the federal judicial system, only the Supreme Court has appellate jurisdiction over

state-court judgments. See 28 U.S.C. § 1257; Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544

U.S. 280, 292 (2005). Accordingly, under the so-called Rooker-Feldman doctrine,[2] "federal district

courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments."

Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005). The doctrine is narrowly

confined to "cases brought by state-court losers complaining of injuries caused by state-court

judgments rendered before the district court proceedings commenced and inviting district court

review and rejection of those judgments." Exxon, 544 U.S. at 284. Accordingly, "a state-court

decision is not reviewable by lower federal courts, but a statute or rule governing the decision may

be challenged in a federal action." Skinner v. Switzer, 131 S. Ct. 1289, 1298 (2011).

In order for the Rooker-Feldman doctrine to apply, four requirements must be met: "First,

the federal-court plaintiff must have lost in state court. Second, the plaintiff must 'complain[ ] of

injuries caused by [a] state-court judgment[.]' Third, the plaintiff must 'invit[e] district court

---

[2] The Supreme Court has applied this doctrine in Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983). See Skinner v. Switzer, 131 S. Ct. 1289, 1297 (2011) ("[T]he Rooker-Feldman doctrine has been applied by this Court only twice.").

review and rejection of [that] judgment[ ].' Fourth, the state-court judgment must have been 'rendered before the district court proceedings commenced'—i.e., <u>Rooker</u>-<u>Feldman</u> has no application to federal-court suits proceeding in parallel with ongoing state-court litigation." <u>Hoblock</u>, 422 F.3d at 85 (quoting <u>Exxon</u>, 544 U.S. at 284) (footnote omitted). "[T]he applicability of the <u>Rooker</u>-<u>Feldman</u> doctrine turns not on the *similarity* between a party's state-court and federal-court claims (which is, generally speaking, the focus of ordinary preclusion law), but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court." <u>McKithen v. Brown</u>, 481 F.3d 89, 97-98 (2d Cir. 2007).

In this case, all four requirements are met in regards to Plaintiff's request that his disbarment be overturned. First, Plaintiff lost his state-court disbarment proceeding. Second, in directly challenging his status as a disbarred attorney, Plaintiff is complaining of injuries caused by the state-court judgment. Third, Plaintiff seeks review and rejection of that judgment. And fourth, the Disbarment Order was rendered before Plaintiff commenced this action. Therefore, the Court lacks subject matter jurisdiction over any claims seeking to overturn the Disbarment Order.

### 2. Standing

Regarding the remaining claims—i.e., those that do not seek review of the Disbarment Order—the Court finds that Plaintiff lacks standing as to all but two.

Standing is an "essential aspect" of the limits of federal judicial power under Article III of the Constitution, which authorizes federal courts to decide only actual "Cases" or "Controversies." <u>Hollingsworth v. Perry</u>, 133 S. Ct. 2652, 2661 (2013). To have standing, a litigant must prove that: (1) she "has suffered a concrete and particularized injury"; (2) the injury "is fairly traceable to the challenged conduct"; and (3) the injury "is likely to be redressed by a favorable judicial decision."

Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)); see also Lujan, 504 U.S. at 560 (describing these three elements as "the irreducible constitutional minimum of standing"). "To have standing, a litigant must seek relief for an injury that affects him in a personal and individual way. He must possess a direct stake in the outcome of the case." Hollingsworth, 133 S. Ct. at 2662 (citations and quotation marks omitted). A litigant "raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." Lujan, 504 U.S. at 573-74.

Plaintiff's remaining claims fall into three categories: challenges to the entire attorney disciplinary system, challenges to the Committee's post-disbarment investigations for possible unauthorized practice of law, and challenges to the withholding of his disciplinary file.

Plaintiff lacks standing to bring a general challenge to the entire New York State attorney discipline system. Plaintiff's eleventh cause of action challenges "the Committee's selective non-enforcement of attorney discipline in regards to attorneys having high-rank familial and political connections, de facto creating a class of legal nobility in New York." Resp. at 9. He seeks "a declaration that the whole scheme of enforcement of attorney disciplinary rules is unconstitutional." Am. Compl. ¶ 385. For the reasons stated *supra*, any challenge to Plaintiff's disbarment based on the selective non-enforcement of the disciplinary rules is barred by the Rooker-Feldman doctrine. All that remains is therefore a generalized grievance against the regulation of attorneys in New York, which is insufficient to confer Article III standing. Furthermore, Plaintiff supports this cause of action by identifying attorneys who have not been disciplined for misconduct alleged by Plaintiff.

9

Am. Compl. ¶¶ 299-332.  However, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973).  Plaintiff therefore does not have standing to bring a claim challenging the selective non-enforcement of attorney disciplinary rules.

The twelfth cause of action similarly seeks a declaration that the attorney disciplinary system is unconstitutional.  Am. Compl. ¶ 464.  However, the only alleged injury the Court can discern within the rambling assemblage of words that Plaintiff labels as the "twelfth cause of action" is Plaintiff's disbarment, see, e.g., Am. Compl. ¶ 400,  any challenge to which is barred by Rooker-Feldman.  Plaintiff therefore lacks standing to bring whatever claim might lie hidden within the Amended Complaint's final section.

In the next category of claims, Plaintiff alleges that the threat of prosecution for unauthorized practice of law violates various constitutional rights.  See generally Am. Compl. ¶¶ 76-270.  Defendants argue that Plaintiff lacks standing to bring these "merely speculative" claims.  Mem. at 16-17.

Where a plaintiff challenges threatened government action, he need not "expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced."  MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 128-29 (2007).  "The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction."  Id. Nevertheless, in order to have standing, "[a] plaintiff must allege something more than an abstract, subjective fear that his rights are chilled in order to establish a case or controversy."  Nat'l Org. for Marriage, Inc. v. Walsh, 714 F.3d 682, 689 (2d Cir. 2013) (citing Laird v. Tatum, 408 U.S. 1, 13-14

(1972)).  The fear of prosecution must be "real and imminent."  Id.; see also Vt. Right to Life

Comm., Inc. v. Sorrell, 221 F.3d 376, 382 (2d Cir. 2000) ("A plaintiff bringing a pre-enforcement

facial challenge against a statute need not demonstrate to a certainty that it will be prosecuted under

the statute to show injury, but only that it has 'an actual and well-founded fear that the law will be

enforced against' it." (quoting Virginia v. American Booksellers Ass'n, 484 U.S. 383, 393 (1988))).

"If a plaintiff's interpretation of a statute is 'reasonable enough' and under that interpretation the

plaintiff 'may legitimately fear that it will face enforcement of the statute,' then the plaintiff has

standing to challenge the statute."  Pac. Capital Bank, N.A. v. Connecticut, 542 F.3d 341, 350 (2d

Cir. 2008) (quoting Sorrell, 221 F.3d at 383).

Plaintiff's pre-enforcement challenge to the UPL Provisions asserts that he fears prosecution

for a host of activities, including teaching, speaking, and writing about the law; homeschooling his

minor child; working in a law office in a non-attorney capacity; testifying in out-of-court

proceedings; serving as a private arbitrator or mediator; representing clients before arbitrators; and

engaging in lay advocacy where otherwise allowed; participating in the democratic process;

representing himself *pro se* in court; and associating with his spouse, family, and friends in his own

home.  Am. Compl. ¶¶ 97, 104, 107, 111, 126, 136, 181, 199, 212-13, 226-27, 236, 245.  However,

Plaintiff's fear of prosecution for these activities appears largely unfounded.  First, Plaintiff

interprets the relevant phrase "to give to another an opinion as to the law" as encompassing a broad

field of social activity, but cites no authority for that interpretation.  See, e.g., Am. Compl. ¶¶ 128-

29.  Given that many of the activities he mentions are not directly associated with the practice of

law, Plaintiff's interpretation of the phrase "to give to another an opinion as to the law" is not

reasonable enough to support a pre-enforcement action.  See N.Y. STAT. LAW § 235 ("When a word

is susceptible of two or more significations, the meaning to be given must be determined from the context of the statute, the purpose and spirit of it, and the intention of the lawmakers."). Second, Plaintiff has not stated any facts showing that the Committee or any other law enforcement body will interpret the UPL Provisions as he does. Indeed, Plaintiff has offered no evidence as to the interpretation of the UPL Provisions by New York courts and the Committee. Finally, Plaintiff has not shown that the Committee has threatened to prosecute him for such activities.

The only allegations supporting a fear of prosecution are those related to the Committee's post-disbarment investigations. Those investigations related to a far narrower range of activities: Plaintiff's conduct in his home, where his spouse maintains a home office for her law practice; and Plaintiff's service of process in a matter involving his spouse. Am. Compl. ¶¶ 37-44, 49-50. Plaintiff has also alleged that, because of the investigations, he has refrained from communicating with longtime friends who are clients of his spouse for fear of prosecution for unauthorized practice of law. Id. ¶ 104. Assuming the truth of these allegations, Plaintiff has stated facts showing a well-founded fear that the law might be enforced against him for these activities. Accordingly, Plaintiff has standing to bring his claim to enjoin enforcement of the UPL Provisions against him based on his spouse's law practice.[3]

In the final category of remaining claims, Plaintiff alleges that the Committee has unlawfully withheld the file related to his disciplinary charges both during and after his disbarment proceedings. Id. ¶¶ 65-66, 75. Although the precise contours of this claim are unclear, Plaintiff's allegation that the withholding of the disciplinary file violates his due process rights constitutes a

---

[3] Plaintiff also has standing to proceed on a damages claim against Zayas based on the post-disbarment investigations. The Court makes no determination as to the merits of either claim at this time.

particularized injury traceable to the challenged conduct that could be redressed by a favorable decision. Therefore, although the Court makes no determination as to the merits of this claim at this time, Plaintiff has standing to bring it.[4]

### 3. Sovereign Immunity

#### a. Damages

Plaintiff seeks damages under 42 U.S.C. § 1983, which provides that "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." It is well settled that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). This rule comports with the Eleventh Amendment to the United States Constitution, under which federal courts lack jurisdiction over suits for damages against state defendants. See Hans v. Louisiana, 134 U.S. 1 (1890).

Here, only Defendant Zayas has been sued in his individual capacity. See Am. Compl. Accordingly, to the extent Plaintiff seeks damages for his remaining claims, only Zayas can be liable.

#### b. Declaratory and Injunctive Relief

Eleventh Amendment immunity does not preclude suits for prospective declaratory and injunctive relief from continuing violations of federal law brought against state officers in their official capacities. Ex Parte Young, 209 U.S. 123 (1908); W. Mohegan Tribe & Nation v. Orange Cnty., 395 F.3d 18, 21 (2d Cir. 2004). Plaintiff's claims for access to the Committee's disciplinary

---

[4] As stated *supra*, any claim seeking to overturn the Disbarment Order based on the withholding of the disciplinary file is barred by the Rooker-Feldman doctrine.

file and for an injunction against enforcement of the UPL Provisions are therefore not barred by sovereign immunity.

"In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." <u>Young</u>, 209 U.S. at 157. "The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists." <u>Id.</u> at 157. Courts in this circuit have generally applied this holding to require only that a defendant have a "connection" with the unconstitutional act, and not more. <u>See</u> <u>In re Dairy Mart Convenience Stores, Inc.</u>, 411 F.3d 367, 372-73 (2d Cir. 2005); <u>Pugh v. Goord</u>, 571 F. Supp. 2d 477, 517 (S.D.N.Y. 2008) (collecting cases). The state official need not be personally involved with the alleged wrongdoing to be properly named as a defendant. <u>Marinaccio v. Boardman</u>, No. 02-CV-831, 2005 WL 928631, at *9 (N.D.N.Y. Apr. 19, 2005) (collecting cases).

Applying this standard to Plaintiff's pre-enforcement challenge to the UPL Provisions, the Court finds that Defendants Zayas, Duffy, Peters, Northrup, and Schneiderman are proper defendants to Plaintiff's claims for prospective declaratory and injunctive relief. Plaintiff specifically alleges that Zayas "investigated both complaints." Am. Compl. ¶ 92. Zayas is therefore directly connected to the feared enforcement. Duffy is a proper defendant in her capacity as Chairperson of the Committee, which is charged with investigating attorney misconduct and with supervising the Committee's staff. <u>See</u> N.Y. Ct. Rules § 806.3(b). Peters, as a Third Department Justice, has the power to punish violations of the Disbarment Order as a contempt of court. <u>See</u>

14

N.Y. JUD. LAW §§ 90(2), 750, 753. Northrup, as a District Attorney, is authorized to prosecute the crime of unauthorized practice of law. See N.Y. COUNTY LAW § 700(1); N.Y. JUD. LAW § 486. Finally, the New York Attorney General is specifically authorized to bring both criminal and civil actions against any person for "unlawful practice of law." N.Y. JUD. LAW § 476-a(1).

On the other hand, Defendants Skelos, Cuomo, and Lippman have no connection to the enforcement of the UPL Provisions. Plaintiff has not identified any connection between Skelos, a state legislator, and enforcement of the challenged laws. Regarding Cuomo, Plaintiff states that he "seeks to enjoin the [sic] Governor Cuomo in his executive capacity from enforcing UPL statutes . . . ." Resp. at 11. However, Plaintiff does not identify any statutory provision giving the Governor the power to enforce the UPL Provisions, and the Governor's general constitutional duty to "take care that the laws are faithfully executed" does not create a sufficiently close connection to enforcement. See Nolan v. Cuomo, No. 11 CV 5827, 2013 WL 168674, at *9 (E.D.N.Y. Jan. 16, 2013) (quoting N.Y. CONST. art IV, § 3, and collecting cases). Finally, Plaintiff has not identified any connection between Lippman and enforcement of the UPL Provisions.

The Court must also consider whether Plaintiff has named a proper defendant in his claim for access to the disciplinary file. As mentioned *supra*, the precise subject of this claim remains obscure, but it appears that only Zayas and the Committee have any connection to the alleged wrongdoing. See Am. Compl. ¶¶ 62-66. Accordingly, only Defendants Zayas and Duffy, in her capacity as Chairperson of the Committee, are proper defendants for this claim.

### 4. *Official Immunity*

#### a. Damages

In their briefs, the parties discussed various forms of official immunity from suits for money

damages. Mem. at 7-11, 19; Resp. at 10-16; Reply at 2-3. This discussion is largely irrelevant since only Zayas is sued for damages. The Court therefore examines only the parties' arguments as to Zayas's immunity from suit.

"A limited number of officials are entitled to absolute immunity from § 1983 damages liability for their official acts." Scotto v. Almenas, 143 F.3d 105, 110 (2d Cir. 1998). "However, because absolute immunity detracts from section 1983's broadly remedial purpose, the presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." Id. (citation, alteration, and internal quotation marks omitted). "Courts take a functional approach when determining whether an official receives qualified or absolute immunity; the level of immunity flows not from rank or title or location within the Government, but from the nature of the official's responsibilities." Id. (alteration and internal quotation marks omitted).

First, Defendants argue that Zayas is protected by absolute quasi-judicial immunity. Under this doctrine, absolute immunity extends to administrative officials performing discretionary acts of a judicial nature. See Cleavinger v. Saxner, 474 U.S. 193, 200 (1985); Oliva v. Heller, 839 F.2d 37, 39 (2d Cir. 1988). But Plaintiff's claims based on the post-disbarment investigations and the denial of access to the disciplinary file do not concern acts of a judicial nature. Defendants cite two district court cases in which members of state bar disciplinary committees were found protected by quasi-judicial immunity. Mem. at 11 (citing Brooks v. N.Y. Sup. Ct., No. 02-CV-4183, 2002 WL 31528632 (E.D.N.Y. Aug. 16, 2002) and Sassower v. Mangano, 927 F. Supp. 113, 120 (S.D.N.Y. 1996)). However, those decisions concerned claims challenging the adjudication of attorney disciplinary proceedings by the committees. See Brooks, 2002 WL 31528632, at *2; Sassower, 927

F. Supp. at 120.  Here, Plaintiff's remaining claims concern actions by Zayas that are investigative and administrative, not judicial.  Accordingly, quasi-judicial immunity does not apply.[5]

Second, Plaintiff argues that Zayas is not protected by prosecutorial immunity.[6]  Prosecutors are absolutely immune from suits for damages based on the initiation and pursuit of a criminal prosecution.  Imbler v. Pachtman, 424 U.S. 409, 426-27 (1976).  However, "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor."  Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).  "[W]hen a prosecutor is not acting as an 'officer of the court,' but is instead engaged in, say, investigative or administrative tasks," absolute immunity does not apply.  Van de Kamp v. Goldstein, 555 U.S. 335, 342 (2009).

Zayas's alleged actions in the post-disbarment investigations were purely investigatory, not prosecutorial.  And the alleged withholding of the disciplinary file post-disbarment can best be described as administrative.  Defendants provide no explanation for why prosecutorial immunity should nevertheless apply to these acts.  See Reply at 2-3 (presenting two block quotes on prosecutorial immunity unaccompanied by any analysis).  No prosecutorial acts are at issue in Plaintiff's surviving damages claims, and so Zayas is not entitled to absolute immunity.[7]

_____

[5] Plaintiff's claims challenging the disbarment proceedings, which would be barred by absolute quasi-judicial immunity, are also barred by the Rooker-Feldman doctrine.

[6] The State Defendants did not raise the defense of absolute prosecutorial immunity in support of their Motion, and first mentioned it in their Reply.  Reply at 2-3.  The Court need not consider issues raised for the first time in a party's reply brief.  Shanks v. Village of Catskill Bd. of Trustees, 653 F. Supp. 2d 158, 165 n.6 (N.D.N.Y. 2009) (citing Knipe v. Skinner, 999 F.2d 708, 711 (2d Cir. 1993)).  Furthermore, absolute official immunity does not deprive a court of subject matter jurisdiction, Byars v. Malloy, No. 11CV17, 2011 WL 4538073, at *5 (D. Conn. Sept. 29, 2011), so the Court has no duty to raise it *sua sponte*.  Nevertheless, for clarity's sake, the Court examines the applicability of prosecutorial immunity.

[7] The Court notes that the State Defendants have not invoked qualified immunity.

b. Declaratory and Injunctive Relief

Section 309(c) of the Federal Courts Improvement Act ("FCIA") of 1996, Pub. L. No.

104–317; 110 Stat. 3847, 3853, amended § 1983 to provide that, "in any action brought against a

judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall

not be granted unless a declaratory decree was violated or declaratory relief was unavailable."  This

amendment overturned Pulliam v. Allen, 466 U.S. 522 (1984), which had held that "judicial

immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial

capacity," id. at 542; see also Simmons v. Fabian, 743 N.W.2d 281, 289-94 (Minn. Ct. App. 2007)

(detailing legislative history of FCIA).  Defendants argue that § 309(c) requires dismissal of the

judicial and quasi-judicial defendants—Peters, Zayas, and Duffy.  Mem. at 10-11.  However, it is

clear from both the language and intent of § 309(c) that its statutory grant of immunity from

equitable remedies applies only to suits against judicial defendants acting in their *judicial* capacities.

As stated *supra*, none of the actions underlying Plaintiff's remaining claims—the post-disbarment

investigations and the withholding of the disciplinary file—are judicial.[8]  FCIA § 309(c) therefore

does not shield Peters, Zayas, and Duffy from Plaintiff's remaining claims for declaratory and

injunctive relief.

---

[8] Additionally, the language and legislative history of the FCIA cast doubt on Plaintiff's implied assertion that this statutory grant of judicial immunity extends to those officials protected by common-law quasi-judicial immunity.  See Hili v. Sciarrotta, 140 F.3d 210, 215 (2d Cir. 1998) ("It is not clear from the language of the amendment or from our cursory review of the legislative history whether the new restriction on the granting of injunctive relief against 'judicial officers' was meant to extend to other officials whose entitlement to absolute immunity from damages had been recognized in light of their roles in judicial proceedings."); Simmons, 743 N.W.2d at 294 ("[T]he legislative history demonstrates that Congress did not even consider the issue of quasi-judicial officers when it amended section 1983, much less affirmatively intend to restrict the availability of injunctive relief against them.").

*4. Younger Abstention*

Federal courts have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." Cohens v. Virginia, 19 U.S. 264, 404 (1821). Younger v. Harris recognized a limited exception to this general rule, holding that federal courts should abstain from exercising jurisdiction over suits to enjoin pending state criminal proceedings, absent a showing of bad faith, harassment, or a patently invalid state statute. 401 U.S. 37, 53-54 (1971). Although the Younger abstention doctrine has been extended to certain "civil enforcement proceedings" and to civil proceedings "uniquely in furtherance of the state courts' ability to perform their judicial functions," the Supreme Court recently confirmed that these exceptional categories define the scope of the doctrine. Sprint Commc'ns, Inc. v. Jacobs, 143 S. Ct. 584, 591 (2013).[9]

Here, the Court finds that it must exercise jurisdiction over Plaintiff's remaining claims. In arguing for abstention, Defendants cite Middlesex County Ethics Committee v. Garden State Bar Ass'n, which held that abstention was required in a suit to enjoin pending state attorney disciplinary proceedings. Mem. at 14 (citing 457 U.S. 423, 432 (1982)). But no disciplinary proceedings are pending in this case. The disbarment proceedings have concluded and are nevertheless not the subject of any of the remaining claims. And the post-disbarment investigations for unauthorized practice of law have not culminated in the filing of a complaint. See Sprint, 134 S. Ct. at 592 (stating that in the Younger "genre" of cases, "[i]nvestigations are commonly involved, often culminating in the filing of a formal complaint or charges"). Therefore, although enjoining pending

---

[9] Sprint was decided after the parties briefed Defendants' Motion. The State Defendants subsequently sought leave to amend their Younger discussion in light of Sprint, and Plaintiff sought leave to respond. Dkt. Nos. 44, 45 (collectively, "Letter Motions"). The Court has reviewed the State Defendants' amended argument and finds it unpersuasive, and therefore denies the Letter Motions as moot.

disciplinary proceedings against a disbarred attorney for unauthorized practice of law might interfere with the functioning of the New York State judicial system, no such proceedings are pending in this case.[10]  Accordingly, Middlesex is inapplicable, and the Court must exercise jurisdiction over the case.

## IV.    PLAINTIFF'S MOTION

### A.  Legal Standard

Under Rule 15(d) of the Federal Rules of Civil Procedure, "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." FED. R. CIV. P. 15(d).  "[A] Rule 15(d) motion may be appropriate when the movant seeks to add new parties or claims arising from the new events." Bracci v. Becker, No. 11-CV-1473, 2013 WL 123810, at *25 (N.D.N.Y. Jan. 9, 2013).  "Rule 15(d) motions are evaluated by the court under the same standards used to evaluate motions to amend pleadings under Rule 15(a)." Id. at *26.

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires."  FED. R. CIV. P. 15(a); Foman v. Davis, 371 U.S. 178, 182 (1962); Manson v. Stacescu, 11 F.3d 1127, 1133 (2d Cir. 1993).  Nevertheless, it is appropriate for leave to

---

[10] Defendants also argue that abstention "may be warranted even where no state proceedings are pending. . . . where the relief sought would require equitable intervention that is both intrusive and unworkable." Mem. at 14-15; see also Dkt. No. 44 at 4.  Defendants rely on O'Shea v. Littleton, 414 U.S. 488 (1974), and Rizzo v. Goode, 423 U.S. 362 (1976). Mem. at 14.  Those cases involved requests for structural injunctions modifying state-court bail and sentencing procedures, and internal police disciplinary procedures, respectively.  O'Shea, 414 at 491; Rizzo, 423 U.S. at 379.  Here, Plaintiff's remaining claims do not seek wide-ranging structural relief.  Rather, he seeks: (1) an injunction against the enforcement of a discrete set of statutory provisions against a single individual; and (2) an injunction granting him access to a set of government documents. Accordingly, should Plaintiff succeed on his claims, the relief requested will not be unworkable or unduly intrusive to New York's sovereign interests.  Abstention is therefore inappropriate.

be denied if the proposed amendment would be futile or cause undue delay.  See Foman, 371 U.S. at

182; Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993).

Additionally, Local Rule 7.1(a)(4) requires a party moving to amend a pleading pursuant to

Rule 15 to attach "an unsigned copy of the proposed amended pleading to its motion papers."  It

further provides:

> The motion must set forth specifically the proposed amendments and identify the amendments in the proposed pleading, either through the submission of a red-lined version of the original pleading or other equivalent means.
>
> Where a party seeks leave to supplement a pleading pursuant to Fed. R. Civ. P. 15(d), the party must limit the proposed supplemental pleading to transactions or occurrences or events which have occurred since the date of the pleading that the party seeks to supplement.  The party must number the paragraphs in the proposed pleading consecutively to the paragraphs contained in the pleading that it seeks to supplement. In addition to the pleading requirements set forth above, the party requesting leave to supplement must set forth specifically the proposed supplements and identify the supplements in the proposed pleading, either through the submission of a red-lined version of the original pleading or other equivalent means.

### B.  Discussion

Plaintiff's failure to comply with the Rules makes it nearly impossible for the Court to

evaluate his Motion to supplement the Amended Complaint.  The paragraphs in the Proposed

Supplemental Complaint are not numbered consecutively to the paragraphs in the Amended

Complaint, see Proposed Supplemental Compl., leaving the relationship between the two unclear.

Plaintiff further obfuscates the purpose of his Motion by including a proposed supplemental

pleading consisting almost entirely of facts that took place *before* the filing of the Amended

Complaint.  See generally Proposed Supplemental Compl.  And, in his Response to Defendants'

Motion, Plaintiff appears to refer to his Motion to supplement as "a separate motion to amend" the

Amended Complaint.  Resp. at 10.  The Court therefore cannot even determine whether Plaintiff

intends to move to supplement the complaint under Rule 15(d) or to amend it under Rule 15(a).

Rather than stagger through this fog of confusion, the Court denies the Motion for failure to comply with Local Rule 7.1(a)(4). Plaintiff is advised that any further Motions must comply with all applicable provisions of the Federal Rules of Civil Procedure and the Local Rules of the Northern District of New York. In light of the bloviations in the Amended Complaint, the Court specifically warns Plaintiff that any additional pleadings must comply with the requirements of Federal Rule of Civil Procedure 8: a pleading must contain "a short and plain statement of the claim," and "[e]ach allegation must be simple, concise, and direct." FED. R. CIV. P. 8(a)(2), (d)(1).

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 18) to dismiss is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED**, that, consistent with this Memorandum-Decision and Order, Plaintiff's claim based on the post-disbarment investigations and possible prosecution for unauthorized practice of law related to his spouse's law practice survives to the extent it seeks prospective declaratory and injunctive relief against Defendants Zayas, Duffy, Peters, Northrup, and Schneiderman, and monetary relief against Defendant Zayas. Plaintiff's claim for access to the disciplinary file survives to the extent it seeks prospective declaratory and injunctive relief against Defendants Zayas and Duffy, and monetary relief against Defendant Zayas. Plaintiff's remaining claims are **DISMISSED**; and it is further

**ORDERED**, that Defendants Lippman, Cuomo, and Skelos are **DISMISSED** from the case; and it is further

**ORDERED**, that Plaintiff's Motion (Dkt. No. 28) to supplement the Amended Complaint is **DENIED**; and it is further

**ORDERED**, that the Letter Motions (Dkt. Nos. 44, 45) are **DENIED as moot**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

DATED:       March 31, 2014
             Albany, New York

Lawrence E. Kahn
U.S. District Judge